IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEREMIAH WODARSKI, )
JULIA CALIPO, JANET CALIPO, )
JADEN CALIPO, JACKSON CALIPO, )
AND LILY CALIPO, )
)
              Plaintiffs, )    Civil Action No. 10-292 Erie
)
   v. )
)
ERIE OFFICE OF CHILDREN AND )
YOUTH SERVICES, RETA TOBIN, )
MICHELLE CURRY AND ERIC )
HACKWELDER, )
)
              Defendants. )

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., District Judge.

      Plaintiffs, Jeremiah Wodarski ("Wodarski") and Julia Calipo ("Calipo"), proceeding *pro se*, filed this civil rights action on December 13, 2010 against Defendants Erie Office of Children and Youth Services ("OCY"), Reta Tobin ("Tobin"), Michelle Curry ("Curry") and Eric Hackwelder ("Hackwelder"), for alleged violations of their federal civil rights.[1] Presently pending before the Court is the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) [ECF No. 18] filed on March 21, 2011, and renewed on September 1, 2011 [ECF No. 24]. The matter has been fully briefed and is ripe for disposition. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] Also named as Plaintiffs in this action are Calipo's children, Janet Calipo, Jaden Calipo, Jackson Calipo and Lily Calipo. However, it is well established that a *pro-se* non-attorney parent may not bring an action on behalf of minor children in federal court. *See Osei-Afriyie v. Medical College of Pa.*, 937 F.2d 876, 883 (3rd Cir. 1991) (non-lawyer appearing pro-se may not act as attorney for his children). This rule has been extended to civil rights and constitutional violations. *See Cole v. Montague Bd. of Educ.*, 145 Fed. Appx. 760, 762 n.1 (3rd Cir. 2005). Accordingly, any claims brought on behalf of the children will be dismissed without prejudice. *Goodson v. Maggi*, 2010 WL 1375410 at *3 (W.D.Pa. 2010).

1

I.  **BACKGROUND**

According to the allegations set forth in the Amended Complaint,[2] this lawsuit stems from the temporary removal of Calipo's children from her custody by OCY in December 2010. In March 2010, Wodarski and Calipo lived together in Erie County, Pennsylvania, along with Calipo's four children. *See* [ECF No. 20] pp. 6-7.  On March 30 or 31, 2010, Tobin, a caseworker for OCY, came to the Plaintiffs' home and informed Calipo that a referral had been made to OCY based on an abuse claim lodged against Wodarski by his estranged wife concerning their two minor daughters. *Id*. at pp. 5-6; 10.

Wodarski was subsequently arrested by the Butler County, Pennsylvania, police on April 9, 2010 and charged with two counts of indecent exposure and two counts of corruption of minors. *See Comm. v. Wodarski*, Criminal Docket No. CP-10-CR-0000729-2010, in the Court of Common Pleas of Butler County, Pennsylvania.[3] The conditions of his bond prohibited him from having contact with the alleged victims or other children. *Id*. at p. 5, Entry 2/2.  He was also required to live with his mother in Erie, Pennsylvania. *Id.*; *see also* [ECF No. 20] p. 12. Calipo contends that OCY contacted the Butler County District Attorney's Office on April 22, 2010 and reported that Wodarski had been in contact with her children. *See* [ECF No. 20] p. 16-17.  Calipo claims this constituted "harassment" on OCY's part, but acknowledged that Wodarski had, in fact, been in her home, but had "very rarely" been in contact with minor children and had been "monitored" by her. *Id*.  On May 26, 2010, the Commonwealth's motion to revoke Wodarski's bond in the criminal case was denied without prejudice. *Id.; see also Comm. v. Wodarski*, Criminal Docket No. CP-10-CR-0000729-2010, in the Court of Common Pleas of Butler County, Pennsylvania, p. 6, Entry 12/1.

---

[2] Calipo further elaborated upon the allegations in a hearing held on January 25, 2011 [ECF No. 20] and in a telephonic conference on October 17, 2011 [ECF No. 25].  The Court views the additional information supplied by Calipo as oral amendments to the Plaintiffs' pleadings.

[3] This Court may take judicial notice of the state criminal proceedings in connection with this Rule 12(b)(6) adjudication. *See O'Boyle v. Braverman*, 337 Fed. Appx. 162, 164 (3rd Cir. 2009) (in resolving a Rule 12(b)(6) motion, a court may properly look at public records, concluding judicial proceedings, in addition to the allegations in the complaint).

On December 8, 2010, three of Calipo's children were temporarily removed from her home and placed in foster care pursuant to a court order signed by Erie County Judge John Trucilla. *See* [ECF No. 20] p. 14. The removal was based on a report that Wodarski had been present in Calipo's home. *Id*. At the hearing on the request for a temporary restraining order in this action, Calipo conceded that Wodarski had been at her house, but stated he was not living with her and had no contact with her children. *See* [ECF No. 20] p. 19.

A hearing was subsequently held before a Master concerning the temporary removal of Calipo's children by OCY. *See* [ECF No. 20] p. 20. The Master recommended that Calipo maintain physical custody of her children, but that OCY retain temporary legal custody. *Id*. at pp. 19-20; 22. Judge Trucilla signed an order to that effect on December 22, 2010 and Calipo's children were returned to her care. *Id*. at pp. 4; 21-23. Calipo sought reconsideration of that order, and following a hearing in January or February of 2011, legal custody was restored to her. *See* [ECF No. 25] pp. 4-5.

On March 9, 2011, Wodarski pled *nolo contendere* to one count of corruption of minors, and was subsequently sentenced on May 24, 2011 to time already served followed by probation for 24 months. *See* [ECF No. 25] p. 3; *Comm. v. Wodarski*, No. CP-10-CR-0000729-2010, in the Court of Common Pleas of Butler County, Pennsylvania, pp. 4; 9-10, Entry 40/1 and 45/1. Wodarski appealed this sentence on October 11, 2011, but the appeal was dismissed by the Superior Court on December 12, 2011 for failure to comply with Pa.R.C.P. 3517.[4] *See Comm. v. Wodarski*, No. 1633 WDA 2011, in the Superior Court of Pennsylvania.

In the instant lawsuit, Plaintiffs allege that various actions taken by the Defendants in connection with the above court proceedings violated their constitutional rights, were discriminatory, were defamatory, and were taken by the Defendants pursuant to a "conspiracy under §§ 1983." *See* [ECF No. 22] p. 2. Specifically, Plaintiffs allege that on "numerous occasions" Tobin, Curry and Hackwelder made "purgerous" (sic) statements" in court or in

---

[4] This rule provides that: "[w]henever notice of appeal to the Superior Court is filed, the Prothonotary shall send a docketing statement form which shall be completed and returned within ten (10) days in order that the Court shall be able to more efficiently and expeditiously administer the scheduling of argument and submission of cases on appeal. Failure to file a docketing statement may result in dismissal of the appeal." Pa.R.A.P. 3517.

writing that were "premeditated to cause severe damage to character, social standing, civil rights and protections under the Amendments." *Id*. at pp. 2-3. According to the Plaintiffs, Tobin "lied in court and in written form as to what [the] events and situation were." *Id*. at p. 3. In addition, Hackwelder allegedly committed perjury when he "falsely stated" to an Administrative Law Judge that there were criminal charges pending against Wodarski relating to the OCY complaints. *Id*. Plaintiffs allege that "[i]t is well settled that Attorney Hackewelder and O.C.Y. agents have a mutual understanding and meeting of the minds to go to great lengths to achieve their own brand of justice against the plaintiffs." *Id*. at p. 4.

Plaintiffs further allege:

… O.C.Y. is out of control and destroys families based on heresay, rumors, inferences, and false allegations. They are insensitive to the capability of false reporting and are quick to judge persons as indicated or founded. These labels destroy peoples lives and certain livelyhoods, they are the leapers of society being megans law and sex offender listed with no court conviction. Functioning under rules they compose, alter, and makeup to their benefit as situations require.

[ECF No. 22] p. 3.

## II. STANDARD OF REVIEW

Defendants have moved for dismissal of the Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3rd Cir. 2008). Because Plaintiffs are proceeding pro se, their complaint must be "'liberally construed'" and "'held to less stringent standards than formal pleadings drafted by lawyers[.]'" *Brown v. City of Long Branch*, 380 Fed. Appx. 235, 238 (3rd Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Nevertheless, a complaint, even one that is *pro se*, must be dismissed if it does not allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Thakar v. Tan*, 372 Fed. Appx. 325, 328 (3rd Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, __ , 129 S.Ct. 1937, 1949 (2009)). *See also Bell Atlantic Corp.*

4

*v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Iqbal*, 129 S.Ct. at 1949). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 129 S.Ct. at 1949. In determining the sufficiency of a complaint under *Twombly* and *Iqbal*, the court conducts a three step inquiry:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S.Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*.

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3rd Cir. 2010) (footnote omitted); *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3rd Cir. 2011); *Thornton v. City of Pittsburgh*, 777 F. Supp. 2d 946, 950 (W.D.Pa. 2011).

### III. DISCUSSION

Plaintiffs' claims are premised on 42 U.S.C. § 1983, which provides a private right of action to:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. …

42 U.S.C. § 1983. In order to state a viable claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3rd Cir. 1996).

In addition, to succeed on a conspiracy claim under § 1983, a plaintiff must prove both the deprivation of a constitutional right and the existence of a conspiracy to violate that right. *See Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3rd Cir. 1999) ("In order to

prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right.") *superseded by statute on other grounds as stated in P.P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 730 (3rd Cir. 2009). "'[T]o sufficiently allege a conspiracy, a plaintiff must show 'a combination of two or more person[s] to do a criminal act, or to do a lawful act by unlawful means or for an unlawful purpose.'" *Marchese v Umstead*, 110 F. Supp. 2d 361, 371 (E.D.Pa. 2000) (quoting *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 419 (E.D.Pa. 1999)). A plaintiff must make "'specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.'" *Id*. (quoting *Hammond v. Creative Financial Planning Org.*, 800 F. Supp. 1244, 1248 (E.D.Pa. 1992)). A "mere incantation of the words 'conspiracy' or 'acted in concert' does not talismanically satisfy the [pleading requirements]" for a conspiracy claim. *Sung Tran v. Delavau, LLC*, 2008 WL 2051992 at *10 (E.D.Pa. 2008) (alterations added) (quoting *Loftus v. Southeastern Pennsylvania Transp. Authority*, 843 F. Supp. 981, 987 (E.D.Pa. 1994)).

Finally, to the extent the Plaintiffs are attempting to assert a claim for municipal liability under § 1983, they must plead the existence of a municipal policy or custom, and that said policy or custom caused the alleged constitutional violation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *McTernan v. City of York*, 564 F.3d 636, 657 (3rd Cir. 2009). Liability may not be imposed solely on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Section § 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." *Id*. at 692.

Plaintiffs' § 1983 claims are based primarily on the contention that Wodarski was, in fact, innocent of the criminal charges lodged against him and consequently, OCY's temporary removal of Calipo's children was unjustified and actionable. At the hearing on the Plaintiffs' request for a temporary restraining order, Calipo clarified their theory under oath:

. . .

> THE COURT: Let me ask you this. Tell me if I boiled it down to the essence. You, on behalf of Mr. Wodarski, you contest, you claim that the pending criminal charges against him, the indecent exposure and corruption of minors

relative to his two daughters, you claim he is innocent of those charges, is that right?

      MS. CALIPO:  I claim that, yes, he is innocent.  I claim that I have reviewed both sides, I have read the 51 page discovery document – yes.

      THE COURT: And for that reason, based upon your belief as to his innocence, you contend that OCY's removal of your children and the present placement order that you are working under is inappropriate, is that correct?

      MS. CALIPO: It is, absolutely.

      THE COURT: Do I have that right?

      MS. CALIPO: Absolutely, your Honor.

      THE COURT: Okay.  But in the abstract, you do not, I gather, contest – I'm just trying to see what your theory is.  You do not contest, do you, the right of OCY to remove children if in fact it was demonstrated or proved that someone with whom they are associated had in fact abused other children?

      MS. CALIPO:  Oh, I'm a believer in OCY.  I have made referrals to that agency for a long time.

      THE COURT:  Would it be true, when all is said and done, what is driving this, insofar as you're concerned, is a fundamental disagreement with the allegations that had been made against your boyfriend, which apparently had triggered the removal, the temporary removal of your children and the present status?

      MS. CALIPO: It is correct, I believe it is harassment, you Honor.  I believe my civil rights have been violated and that of my entire family by OCY.  I have been denied due process. …

      • • •

[ECF No. 20] pp. 27-28.  Calipo reaffirmed this theory at the telephonic conference held by the Court on October 17, 2011:

      • • •

>           THE COURT: … Turning to Ms. Calipo, when I went back and looked at
> the transcript of our previous get-together, the basic premise here of your case
> was that OCY, through its personnel, really didn't have good cause or sufficient
> justification to remove your children, even though it was on a temporary basis, to
> remove your children from your house. Because, in your view, the allegations of
> inappropriate conduct by Mr. Wodarski with his natural children had no basis in
> fact, is that right?
>
>           MS. CALIPO: It is. …
>                               • • •

[ECF No. 25] p. 7.

Plaintiffs' claims fail because they cannot establish that the temporary removal of Calipo's children violated their Fourteenth Amendment right to substantive due process. To prevail on this claim, Plaintiffs must establish that "the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." *Chainey v. Street*, 523 F. 2d 200, 219 (3rd Cir. 2008) (citation omitted). There is no question that Calipo had a protected liberty interest in the custody, care and management of her children.[5] *Lehr v. Robertson*, 463 U.S. 248, 257-58 (1983); *Miller v. City of Philadelphia*, 174 F.3d 368, 373 (3rd Cir. 1999); *Croft v. Westmoreland County Children and Youth Servcies*, 103 F.3d 1123, 1125 (3rd Cir. 1997). This liberty interest however, is not absolute and can be overridden by the government's compelling interest to protect children, and "does not include a right to remain free from child abuse investigations." *Croft*, 103 F.3d at 1125 (citation omitted). The state must have "some reasonable and articulable evidence giving rise to a reasonable suspicion that a child has been abused or is in imminent danger of abuse." *Id*. at 1126. Where such evidence exists, the removal of a child from parental custody does not infringe on the liberty interests at stake even though a later investigation reveals no abuse occurred. *Id*.

---

[5] It is highly questionable on this record whether Wodarski, who was neither married to Calipo nor the natural father of her children, had a liberty interest in their custody, care and management. *See Crane v. City of Roy*, 2008 WL 4371662 at *9 (W.D.Wash. 2008) (finding no constitutional violation where boyfriend was not related to girlfriend's children biologically, by marriage, or by adoption, noting "Plaintiffs fail to cite to any authority that a live-in boyfriend, even if engaged to his girlfriend, has a right to family unity with his girlfriend's children."). Nevertheless, I need not conclusively resolve this issue.

For liability to attach under a § 1983 claim challenging a social worker's actions, "the standard of culpability for substantive due process purposes must exceed both negligence and deliberate indifference, and "reach a level of gross negligence or arbitrariness that indeed 'shocks the conscience.'" *Miller*, 174 F.3d at 375-76. In *Ziccardi v. City of Philadelphia*, 288 F.3d 57, 66 (3rd Cir. 2002), the Third Circuit elaborated on this standard of culpability:

> … *Miller* thus appears to have demanded proof of something less than knowledge that the harm was practically certain but more than knowledge that there was a substantial risk that the harm would occur. A simple way of putting this is that *Miller* mandated proof that the defendant was aware of more than a substantial risk-let us say a great risk-that there was no good cause for the removal of the children.
>
> • • •
>
> … Another way of putting the same point is that the social worker, in ordering the father's removal, consciously disregarded a great risk that there had been no abuse.

*Ziccardi*, 288 F.3d at 66; *see also Livingston v. Allegheny County*, 400 Fed. Appx. 659, 664 (3rd Cir. 2010).

In temporarily removing Calipo's children from her residence, it cannot be said that the Defendants consciously disregarded a "great risk" that "there was no good cause for the removal" of her children. *Ziccardi*, 288 F.3d at 66; *Livingston*, 400 Fed. Appx. at 659 (finding no substantive due process violation where "the information available at the time … created an objectively reasonable suspicion of abuse[]" and "[n]o evidence suggest[ed] that [defendants] 'consciously disregarded a great risk that there had been no abuse.'"). The OCY Defendants were aware that charges had been filed against Wodarski and that as a condition of his bond, he was not permitted to have contact with any children, including Calipo's. OCY was entitled to rely on this information in determining whether to temporarily remove Calipo's children. Moreover, the Plaintiffs' contention that OCY lacked a reasonable and articulable basis to remove Calipo's children is flatly and conclusively contradicted by Wodardski's conviction. *See e.g., Lynn v. Schertzberg*, 169 Fed. Appx. 666, 670 (3rd Cir. 2006) (noting that it seemed "apparent" that the plaintiff's false arrest and false imprisonment claims "must fail" where the plaintiff was convicted of the charge against him); *Winston v. Bauer*, 2010 WL 3811314 at *3

9

(W.D.Pa. 2010) ("[A] lack of probable cause cannot be established where the plaintiff was convicted on the charge which served the basis for his arrest."); *McClam v. Barry*, 697 F.2d 366, 370 (D.C.Cir. 1983) (stating that as to common law and constitutional law false arrest claims, a "subsequent conviction establishes as a matter of law that the arrest was justified."); *overruled on other grounds, Brown v. U.S.*, 742 F.2d 1498 (D.C.Cir. 1984).[6]

Since Plaintiffs cannot establish a violation of a constitutional or statutory right, it follows that they cannot maintain a § 1983 conspiracy claim and this claim will be also be dismissed. *See Perano v. Township of Tilden*, 423 Fed. Appx. 234, 239 (3rd Cir. 2011) ("As a threshold matter, … a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right."); *Young v. New Sewickley Township*, 160 Fed. Appx 263, 267 (3rd Cir. 2005) (stating that in order to proceed with a conspiracy claim under § 1983, a plaintiff must sufficiently plead an underlying civil rights violation). Likewise, to the extent Plaintiffs have asserted a municipal liability claim under § 1983 against OCY, this claim fails as well and will be dismissed. *See Bittner v. Snyder County, Pennsylvania*, 345 Fed. Appx. 790, 792-93 (3rd Cir. 2009) ("It is well settled that before a municipality may be found liable under § 1983, there must be a constitutional violation.") (citing *Monell*, 436 U.S. at 694).

In addition, as previously indicated, Wodarski pled *nolo contendere* to one count of corruption of minors, and was subsequently sentenced on May 24, 2011 to time already served followed by probation for 24 months. *See* [ECF No. 25] p. 3; *Comm. v. Wodarski*, No. CP-10-CR-0000729-2010, in the Court of Common Pleas of Butler County, Pennsylvania, p. 4. The

---

[6] As previously discussed, Plaintiffs' allege that Defendants made false statements in court or in writings presented in court in connection with the dependency proceedings. *See* [ECF No. 22] pp. 2-3. These allegations clearly relate to actions taken "in connection with the formulation and presentation of recommendations to the state court regarding [the children's] dependency status and disposition." *Ernst v. Child & Yourth Servs. of Chester County*, 108 F.3d 486, 497 (3rd Cir.), *cert. denied*, 522 U.S. 850 (1997); *see also Breakwell v. Allegheny County Dept. of Human Servs.*, 406 Fed. Appx. 593, 597 (3rd Cir. 2010) (attorney entitled to absolute immunity since claims against her were based solely on her actions as counsel for CYF during the dependency proceedings); *Rees v. Office of Children and Youth*, 744 F. Supp. 2d 434, 462 n.8 (W.D.Pa. 2010) (OCY employees and assistant county solicitor entitled to absolute immunity relative to their involvement in any juvenile court proceedings involving determinations as to dependency and placement of children); *Walthour v. Child and Youth Servs.*, 728 F. Supp. 2d 628, 642-423 (E.D.Pa. 2010) (caseworkers entitled to absolute immunity against claims that they made false statements to the judge and initiated proceedings surreptitiously). To the extent the Plaintiffs' base their defamation claim on in court statements of the Defendants, they are absolutely immune and this pendent state claim is dismissed.

public docket sheet reflects that the appeal was subsequently dismissed by the Superior Court on December 12, 2011. *See Comm. v. Wodarski*, No. 1633 WDA 2011, in the Superior Court of Pennsylvania. Because Wodarski's conviction still stands and the Plaintiffs' claims against OCY and the individual Defendants are premised on his actual innocence, any success on those claims would necessarily call into question Wodarski's criminal conviction. Such a result is prohibited by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that if a judgment in favor of a plaintiff in a civil suit under 42 U.S.C. § 1983 would necessarily imply the invalidity of a prior criminal conviction, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has been invalidated.[7] *See also Bullock v. Luzerne County Children and Youth Servs.*, 2006 WL 126807 at *3 (M.D.Pa. 2006) (holding that plaintiff's § 1983 action against CYS and its employees on the basis that his ongoing sexual assault prosecution was meritless was barred by *Heck*).

Generally, "a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 237 (3rd Cir. 2008). Here, given Wodarski's conviction and the other evidence supporting the objective reasonableness of the temporary removal of Calipo's children, I find any amendment would be futile. Consequently, the Plaintiffs' § 1983 claims will be dismissed with prejudice. *See Alston v. Parker*, 363 F.3d 229, 235-36 (3rd Cir. 2004); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3rd Cir. 2002); *Thornton v. City of Pittsburgh*, 777 F. Supp. 2d 946, 954 (W.D.Pa. 2011).

### IV.    CONCLUSION

An appropriate Order follows.

---

[7] A plea of *nolo contendere* constitutes a conviction for purposes of *Heck v. Humphrey,* 512 U.S. 477 (1994). *See Marable v. W. Pottsgrove Twp.*, 176 Fed. Appx. 275, 280 (3rd Cir. 2006); *see also Moser v. Bascelli*, 978 F. Supp. 489, 493 (E.D.Pa.) ("a criminal defendant who offers a plea of nolo contendere to a given charge stands in the same shoes as one who has been convicted of the charged offense."), *aff'd*, 70 F.3d 1256 (3rd Cir. 1995) (Table case).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEREMIAH WODARSKI, JULIA CALIPO, JANET CALIPO, JADEN CALIPO, JACKSON CALIPO, AND LILY CALIPO, | ) ) ) ) ) |
| Plaintiffs, | ) Civil Action No. 10-292 Erie |
| v. | ) ) |
| ERIE OFFICE OF CHILDREN AND YOUTH SERVICES, RETA TOBIN, MICHELLE CURRY AND ERIC HACKWELDER, | ) ) ) ) ) |
| Defendants. | ) |

## ORDER

AND NOW, this 23rd day of February, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) [ECF No. 18] is GRANTED and the Renewed Motion [ECF No. 24] is GRANTED; Plaintiffs' claims are DISMISSED with prejudice.

The clerk is directed to mark the case closed.


                s/ Sean J. McLaughlin
                United States District Judge


cm:  All parties of record